NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

HALLIE D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.D., *Appellees*.

No. 1 CA-JV 16-0006
FILED 7-21-2016

Appeal from the Superior Court in Yavapai County
No. V1300JD820090003
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Patricia K. Norris joined.

---

**P O R T L E Y**, Judge:

**¶1**        Hallie D. ("Mother") appeals the order terminating her parental rights to her child, J.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**        Mother and Levon B. ("Father") are the biological parents of J., who was born in 2006.  Since 2006, Mother has had multiple encounters with the Department of Child Safety[2] (the "Department").  The Department took J. from Mother in 2014 after she refused to cooperate with the Department and clean her house, get rid of a rat and mouse infestation, seek mental-health services, and help J. avoid chronic school absenteeism which was causing her to test below her grade level.

**¶3**        The Department filed a dependency petition alleging Mother was neglecting J. and her younger sibling[3] due to her mental-health issues, substance abuse, inability to properly parent, and an unsanitary home.  The juvenile court found the children dependent, and set the case plan for family reunification.  Mother, however, failed to participate in services or change her behavior, and the case plan was changed to severance and adoption.

**¶4**        The Department moved to terminate Mother's parental rights.  Mother requested a "paper trial."  The juvenile court, as described

---

[1] "We view the facts in the light most favorable to upholding the juvenile court's order."  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010) (citation omitted).

[2] The Department of Child Safety is the successor to the Arizona Department of Economic Security for child welfare matters.  We refer to both as "the Department."  *See* 2014 Ariz. Sess. Laws, ch. 1, § 3 (2d Spec. Sess.).

[3] J.'s younger sister, T., was placed with her biological father.

in a minute entry, reviewed Mother's trial rights with her and found that she knowingly, voluntarily, and intelligently waived her rights to a trial under the Sixth Amendment to the United States Constitution.[4] At the adjudication, and after receiving Mother's written statement, testimony from the case manager and Father, and an unsworn statement by Mother, the court terminated Mother's parental rights to J.[5] Mother appeals, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and -2101(A)(1).[6]

## DISCUSSION

**¶5**         Mother argues the juvenile court erred in terminating her parental rights on the basis of neglect, mental illness, and chronic drug abuse. She also challenges the court's best interests findings.

**¶6**         A juvenile court may terminate parental rights if the Department proves any one of the statutory grounds for termination by clear and convincing evidence, *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 449, ¶ 12, 153 P.3d 1074, 1078 (App. 2007) (citation omitted), and establishes that termination is in the best interests of the child by a preponderance of the evidence, *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010) (citation omitted). *See also Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3, 53 P.3d 203, 205 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.") (citations omitted).

**¶7**         Because the juvenile court, as the trier of fact, "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," we will accept the court's findings of fact unless no reasonable evidence supports those findings, and will only disturb its determination if it is unsupported by any relevant

---

[4] The record on appeal did not contain the transcript of the rights waiver proceeding. Mother, who was represented by counsel, was advised of her trial rights and the court had to determine whether her waiver of those rights was voluntary because a severance adjudication implicates a parent's constitutional right to the care, custody and control of their child. *See Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990).

[5] Father's parental rights to J. were also terminated. His appeal, however, was dismissed.

[6] We cite the current version of the statute unless otherwise noted.

evidence from which a reasonable person could draw the same conclusion. *Id.* at ¶ 4 (citation omitted); *see Desiree S. v. Dep't of Child Safety*, 235 Ariz. 532, 534, ¶ 7, 334 P.3d 222, 224 (App. 2014); *Mealey v. Arndt*, 206 Ariz. 218, 221, ¶ 12, 76 P.3d 892, 895 (App. 2003).

## I. Mental Illness

**¶8** A parent's rights may be terminated on the basis of mental illness if:

> [T]he parent is unable to discharge parental responsibilities because of mental illness . . . and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period.

A.R.S. § 8-533(B)(3). If mental illness warrants severance, the Department must demonstrate that it has made a reasonable effort to preserve the family. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 33, 971 P.2d 1046, 1053 (App. 1999). The Department "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers," *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994), but need only undertake rehabilitative measures that have a reasonable prospect of success. *Mary Ellen C.*, 193 Ariz. at 192, ¶ 34, 971 P.2d at 1053.

**¶9** Here, the court found that the Department proved Mother had a mental illness that precluded her from properly parenting J.; the Department made reasonable efforts to address her mental illness issues in an attempt reunify the family, but Mother did not participate; and her inability to parent was going to continue into the indefinite future. First, Mother was diagnosed, by a psychologist, with mental health issues; namely, borderline personality disorder, borderline intellectual function, post-traumatic stress disorder, and unresolved grief reaction.[7] Second, the Department provided Mother with reasonable services designed to address and treat her mental health issues. Specifically, the Department provided Mother with a psychological assessment, a substance-abuse assessment, medical and dental services, family treatment court, behavioral health clinic services with the West Yavapai Guidance Clinic, individual and family counseling, medication monitoring, parenting classes, parent aide supervised visits, and transportation services.

---

[7] Mother's infant son, A., died in 2009, after a near-drowning incident that occurred while visiting his biological father.

¶10 Mother participated in the substance-abuse assessment, but did not need treatment. She participated in the medical services, supervised visits, and psychological assessment. After a psychiatric consult associated with one of her hospitalizations, she was diagnosed with a pain disorder, opiate dependency, and a benzodiazepine dependency, but nevertheless refused to participate in the court-ordered family treatment court. She frequently missed urinalysis tests, but when she did test, she generally tested positive for opiates, benzodiazepines, barbiturates,[8] and THC, the active component in marijuana. *See State v. Lucero*, 207 Ariz. 301, 302-03, ¶ 4, 85 P.3d 1059, 1060-61 (App. 2004). And at the severance trial, Mother admitted that she was still using marijuana, even though she needed to maintain sobriety from all illegal substances.[9]

¶11 Mother also refused to participate in the recommended mental health services at the West Yavapai Guidance Clinic, claiming that it "hurts more than helps." Despite several conversations with the case manager about the importance of following through with her recommended services, and being court ordered to participate in mental health services, Mother indicated she had "no intention of following through with mental health services;" she believed her medication was already being appropriately managed by her primary care physician; and she would not participate in counseling services with anyone who would report her statements to the Department.

¶12 Mother's probation officer[10] also referred her to the West Yavapai Guidance Clinic's crisis line because she had suicidal and homicidal ideations. The clinic recommended inpatient psychiatric hospitalization, but Mother declined any treatment. She later denied the crisis, and also denied use of marijuana, which was undermined by her positive urinalysis results.

¶13 Moreover, the evidence supports the juvenile court's finding that further rehabilitative services would be futile. Mother failed to

[8] Mother secured the medications during frequent visits to emergency rooms for headaches, back pain, and other pain complaints, but her physical symptoms were inconsistent with the alleged pain. Her actions raised concerns about substance dependency and drug-seeking behavior.

[9] In fact, Mother asked the case manager on several occasions to "overlook" her continued marijuana use.

[10] Prior to J.'s removal, Mother was placed on probation after pleading guilty to solicitation to commit bribery of one of the Department's child safety workers in 2013.

participate in the services offered to address her mental health issues and continued to engage in inappropriate behavior. Russell Wagner, Ed.D., a licensed psychologist, concluded that without professional intervention and treatment, which she refused, Mother's condition would continue for a prolonged, indeterminate period of time and the child would be at risk of neglect. Given the record, the juvenile court did not abuse its discretion by finding that Mother's mental illness prevented her from discharging her parental responsibilities, and that her inability would continue for the foreseeable future.

## II.     Best Interests Determination

¶14     Termination of a parent's right is in a child's best interests if the juvenile court finds the child would either benefit from the termination or be harmed by continuing the parental relationship. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 237-38, ¶ 26, 256 P.3d 628, 634-35 (App. 2011) (citation omitted). A court can consider whether "a current adoptive plan exists for the child," the child is adoptable, or an existing placement is meeting the child's needs. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19, 83 P.3d 43, 50 (App. 2004) (citations omitted).

¶15     Here, the case manager testified that J. was adoptable, was placed in a possible adoptive home that could meet her physical, social, educational, medical, psychological and emotional needs, and that adoption would give J. permanency and stability. Additionally, since her removal, J. has attended school regularly and made significant progress. Because the evidence supports the court's finding that termination was in J.'s best interests, we find no abuse of discretion.

## CONCLUSION

¶16     For the foregoing reasons, we affirm the termination of Mother's parental rights to J.



Ruth A. Willingham · Clerk of the Court
FILED: AA